1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  STEVEN W. ROSE,                          Case No. 1:08-cv-00681 LJO JLT (PC)

12           Plaintiff,                       FINDINGS AND RECOMMENDATIONS
                                              RECOMMENDING THE DISMISSAL OF
13       vs.                                  THIS ACTION

14  STATE OF CALIFORNIA,                      (Doc. 56)

15           Defendant.

16  _____/

17       Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action

18  pursuant to 42 U.S.C. § 1983.  Pending before the Court is Plaintiff's Third Amended Prisoner

19  Complaint filed on August 17, 2011.  (Doc. 56.)

20  **I.      BACKGROUND**

21       After filing an unsuccessful interlocutory appeal in the Ninth Circuit Court of Appeals in April

22  of 2011, Plaintiff filed a second amended complaint on May 24, 2011.  (Doc. 49.)  In it, Plaintiff

23  identified Defendants Schwarzenegger, Shelton, and Armenta.  Id.  In addition, Plaintiff generally

24  alleged that the February 5, 2008 decision of the Board of Prison Hearings, to deny him parole, was

25  unfair because they considered, inter alia, immutable factors regarding Plaintiff's commitment offense

26  and facts regarding Plaintiff's spiritual beliefs.  In light of these allegations, the Court issued its findings

27  and recommendations which found that Plaintiff had not alleged facts demonstrating that he was denied

28  an opportunity to be heard at his February 2008 parole hearing.  (Doc. 51.)

1

1    However, in response to the findings and recommendations. Plaintiff filed objections which

2    asserted for the first time that he "was not even invited to attend" his February 2008 parole hearing.

3    (Doc. 52.)  After careful consideration of Plaintiff's objections, the Court vacated its previous findings

4    and recommendation and granted Plaintiff leave to amend his complain once again.  (Doc. 53.)  On

5    August 17, 2011, Plaintiff filed his Third Amended Complaint ("TAC").  (Doc. 56.)

6    **II.      SCREENING REQUIREMENT**

7          The Court is required to review a case in which a prisoner seeks redress from a governmental

8    entity or officer.  28 U.S.C. § 1915A(a).  The Court must review the complaint and dismiss any portion

9    thereof that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks

10   monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915A(b).  If the Court

11   determines the complaint fails to state a claim, leave to amend should be granted to the extent that the

12   deficiencies in the pleading can be cured by amendment.  Lopez v. Smith, 203 F.3d 1122, 1127-28 (9th

13   Cir. 2000) (en banc).

14         The Civil Rights Act under which this action was filed provides a cause of action against any

15   "person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United

16   States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or

17   immunities secured by the Constitution and laws [of the United States.]"  42 U.S.C. § 1983.  To prove

18   a violation of § 1983, a plaintiff must establish that (1) the defendant deprived him of a constitutional

19   or federal right, and (2) the defendant acted under color of state law.  West v. Atkins, 487 U.S. 42, 48

20   (1988); Collins v. Womancare, 878 F.2d 1145, 1147 (9th Cir. 1989).  "A person deprives another of a

21   constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in

22   another's affirmative acts, or omits to perform an act which he is legally required to do that causes the

23   deprivation of which [the plaintiff complains]."  Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1993)

24   (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  In other words, there must be an actual

25   causal connection between the actions of each defendant and the alleged deprivation.  See Rizzo v.

26   Goode, 423 U.S. 362, 370-71 (1976).

27         "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim

28   showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . .

2

1    . claim is and the grounds upon which it rests[.]'" <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555

2    (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).  Nevertheless, a plaintiff's obligation to

3    provide the grounds of entitlement to relief under Rule 8(a)(2) requires more than "naked assertions,"

4    "labels and conclusions," or "formulaic recitation[s] of the elements of a cause of action." <u>Twombly</u>,

5    550 U.S. at 555-57.  The complaint "must contain sufficient factual matter, accepted as true, to 'state

6    a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d

7    868, 883 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570).  Vague and conclusory allegations are insufficient

8    to state a claim under § 1983.  <u>See</u> <u>Ivey v. Board of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982).

9    **II.       THE THIRD AMENDED COMPLAINT**

10       Plaintiff identifies the following as defendants to this action: (1) former California Governor

11    Arnold Schwarzenegger; (2) Presiding Commissioner of the Board of Prison Hearings Linda Shelton;

12    and (3) Deputy Commissioner of the Board of Prison Hearings Alejaundro Armenta.  (Doc. 56 at 6-7.)

13    Plaintiff claims that Defendants violated his due process rights under the Fourteenth Amendment.  (<u>Id.</u>

14    at 7.)  Specifically, Plaintiff alleges that he was not provided fair notice of his February 5, 2008 parole

15    hearing and that the hearing was therefore conducted without Plaintiff's knowledge or presence.  (<u>Id.</u> at

16    7.)  Plaintiff also alleges that the decision to deny him parole was unfair because the parole hearing panel

17    based its decision on (1) facts regarding Plaintiff's spiritual beliefs; (2) immutable facts regarding

18    Plaintiff's commitment offense; (3) previously adjudicated disciplinary violations; (4) "ex post facto"

19    standards of rehabilitation; and (5) facts regarding Plaintiff's mental and psychological state.  (<u>Id.</u> at 11-

20    12.)  Plaintiff now seeks declaratory and injunctive relief.  (<u>Id.</u> at 17-18.)

21    **III.      DISCUSSION**

22       **A.       Due Process**

23       The United States Supreme Court succinctly explained in <u>Swarthout v. Cooke</u>, 131 S. Ct. 859,

24    178 L. Ed. 2d 732 (2011), the scope of protection afforded by the Due Process Clause of the Fourteenth

25    Amendment to an inmate in California in his parole eligibility determination.  The Court held that under

26    California's statutory scheme, which creates a liberty interest in release on parole, federal due process

27    requires "fair procedures."  <u>Id.</u> at 862.  It does not, however, encompass a more substantive component,

28    namely California's requirement that denials of parole eligibility be supported by "some evidence" of

1  current dangerousness. Id.

2      In the context of parole, the procedures required by the Due Process Clause are "minimal." Id.

3  A prisoner in California receives "adequate process when he is allowed an opportunity to be heard and

4  was provided a statement of the reasons why parole was denied." Id. (citing Greenholtz v. Inmates of

5  Neb. Penal and Correctional Complex, 442 U.S. 1, 16 (1979)). See Roberts v. Hartley, __ F.3d __,

6  2011WL 1365811, at *3 (9th Cir. Apr. 12, 2011) (federal due process satisfied when the Parole Board

7  permitted the inmate to speak on his own behalf, permitted the inmate to contest the evidence against

8  him, and provided the inmate an explanation of its decision). "The Constitution . . . does not require

9  more." Swarthout, 131 S. Ct. at 862.

10      In the instant case, though Plaintiff's TAC alleges he was denied an opportunity to be heard and

11 therefore seemingly states a valid claim under Swarthout, however, the Court nevertheless finds that

12 Plaintiff's claims are have been mooted by subsequent events.[1]

13     **B.    Mootness**

14      Under Article III of the Constitution, the jurisdiction of federal courts is limited to justiciable

15 cases or controversies, and for a plaintiff's claim to be justiciable, the plaintiff must have standing and

16 the claim must not be moot. Jacobs v. Clark County School District, 526 F.3d 419, 425 (9th 2008)

17 (quotation marks and citations omitted); see also Summers v. Earth Island Inst., 555 U.S. 488, 493

18 (2009); Davis v. Fed. Election Com'n, 554 U.S. 724, 733–34 (2008); Oregon Advocacy Ctr., 322 F.3d

19 1101, 1108 (9th Cir. 2003); Bernhardt v. County of Los Angeles, 279 F.3d 862, 868–69 (9th Cir. 2002).

20 Constitutional standing requires, as an irreducible minimum, that there be (1) an injury in fact, (2) a

21 causal relationship between the injury and the challenged conduct, and (3) a likelihood that the injury

22 will be redressed by a favorable decision. Oregon Advocacy Ctr., 322 F.3d at 1108 (quotation marks

23 and citations omitted); see also Summers, 555 U.S. at 493; Davis, 554 U.S. at 733; Jacobs, 526 F.3d at

24 425; Bernhardt, 279 F.3d at 868–69. While standing is determined based on the facts as they existed at

25

26

27      [1]Additionally, as to Plaintiff's allegations that the BPH based its decision on factors Plaintiff considers improper, it is clear that the Due Process Clause does not permit this Court to evaluate the merits of the Board's decision to deny Plaintiff parole. See Swarthout, 131 S. Ct. at 862; Miller v. Oregon Bd. of Parole and Post-Prison Supervision, __ F.3d __,

28 2011 WL 1533512, at *5 (9th Cir. Apr. 25, 2011) ("The Supreme Court held in [Swarthout v.] Cooke that in the context of parole eligibility decisions the due process right is procedural[.]") (emphasis in original).

1    the time the complaint was filed, an actual controversy must exist at all stages of review, and a claim

2    becomes moot and non-justiciable if the requisite personal interest captured by the standing doctrine

3    ceases to exist at any point during the litigation. <u>Jacobs</u>, 526 F.3d at 425 (quotation marks and citations

4    omitted); <u>Oregon Advocacy Ctr.</u>, 322 F.3d at 1116 (quotation marks and citations omitted); <u>see also</u>

5    <u>Alvarez v. Smith</u>, ––– U.S. ––––, ––––, 130 S.Ct. 576, 580, 175 L.Ed.2d 447 (2009); <u>Bernhardt</u>, 279

6    F.3d at 872.

7        A claim is considered moot if it has lost its character as a present, live controversy, and if no

8    effective relief can be granted due to subsequent developments. <u>See</u> <u>Flast v. Cohen</u>, 392 U.S. 83, 95,

9    (1968). Where injunctive relief is involved, questions of mootness are determined in light of the present

10   circumstances. <u>See</u> <u>Mitchell v. Dupnik</u>, 75 F.3d 517, 528 (9th Cir.1996). "Mootness is a jurisdictional

11   issue, and federal courts have no jurisdiction to hear a case that is moot, that is, where no actual or live

12   controversy exists. If there is no longer a possibility that an appellant can obtain relief for his claim, that

13   claim is moot and must be dismissed for lack of jurisdiction." <u>Foster v. Carson</u>, 347 F.3d 742, 745 (9th

14   Cir. 2003) (citations and internal quotation marks omitted).

15        In this case, due to subsequent events, there is no longer "a likelihood that the injury will be

16   redressed by a favorable decision." <u>Oregon Advocacy Ctr.</u>, 322 F.3d at 1108. Presuming that Plaintiff

17   were to prevail on his claim that he had not been afforded the minimal protections required under

18   <u>Swarthout</u>, Plaintiff's sole prospective relief would be an order requiring the BPH to conduct a parole

19   hearing in compliance with <u>Swarthout</u>. However, as admitted in his federal habeas petition filed in <u>Rose</u>

20   <u>v. Swarthout</u>, case number 2:11-CV-01879 JFM HC (Doc. 1 at 27), Plaintiff has already received a

21   subsequent parole hearing on January 5, 2010 at which the BPH again denied Plaintiff parole.[2]

22   Therefore, there is now no live controversy between the parties and the Court no longer has a basis upon

23   which to provide Plaintiff with the equitable relief requested. Accordingly, the Court recommends that

24    ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

25        [2]The Court takes judicial notice of the docket in case no. 2:11-CV-01879 JFM HC. Fed.R.Evid. 201(b); <u>United States v. Bernal-Obeso</u>, 989 F.2d 331, 333 (9th Cir. 1993); <u>Valerio v. Boise Cascade Corp.</u>, 80 F.R.D. 626, 635 n. 1 (N.D.Cal. 1978), aff'd, 645 F.2d 699, (9th Cir. 1981) (Judicial notice may be taken of court records).

26        The Court notes that Plaintiff does not allege in this habeas action that he was not given an opportunity to be heard at the 2010 parole hearing. <u>Rose v. Swarthout</u>, 2:11-CV-01879 JFM HC, Doc. 1 at 26-27. Indeed, Plaintiff admits implicitly

27   that he participated in the hearing given that he claims to have made objections to the evidence considered by the BPH, though it appears that these objections were not made in person. <u>Id.</u> at 27. Plaintiff attached to his petition for writ of habeas

28   corpus, the Los Angeles County Superior Court's ruling in which the court found that "Petitioner <u>chose not to attend</u> his most recent parole suitability hearing on January 5, 2010." <u>Id.</u> at 49, emphasis added.

1   the TAC be **DISMISSED** as moot.

2         **C.    Eleventh Amendment Immunity**

3         The Eleventh Amendment prohibits federal courts from hearing suits brought against an

4   unconsenting state. <u>Brooks v. Sulphur Springs Valley Elec. Coop.</u>, 951 F.2d 1050, 1053 (9th Cir. 1991).

5   It bars suits against state agencies as well as those where the state itself is named as a defendant. See

6   <u>Natural Resources Defense Council v. California Department of Transportation</u>, 96 F.3d 420, 421 (9th

7   Cir. 1996); <u>Brooks</u>, 951 F.2d at 1053; <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989) (concluding

8   that Nevada Department of Prisons was a state agency entitled to Eleventh Amendment immunity);

9   <u>Mitchell v. Los Angeles Community College District</u>, 861 F.2d 198, 201 (9th Cir. 1989). The immunity

10  applies whether the relief sought is money damages or injunctive relief. <u>Pennhurst State School & Hosp.</u>

11  <u>v. Halderman</u>, 465 U.S. 89, 100 (1984); <u>Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher</u>

12  <u>Educ.</u>, 616 F.3d 963, 967 (9th Cir. 2010) ("The Eleventh Amendment bars suits against the State or its

13  agencies for all types of relief, absent unequivocal consent by the state.").  It applies also in actions

14  brought against an officer of the state in his official capacity.  <u>Id</u>.

15        Here, Plaintiff names all three defendants in their official capacities.  (Doc. 56 at 4, 6-7) Thus,

16  the action in this regard cannot stand and is barred by the Eleventh Amendment.  Thus, the Court

17  recommends that the matter be **DISMISSED**.

18        **D.    Judicial immunity**

19        Under 42 U.S.C. § 1983, those acting in a judicial capacity are immune from suit regardless of

20  whether Plaintiff is seeking damages or injunctive relief. <u>Moore v. Brewster</u>, 96 F.3d 1240, 1243-1244

21  (9th Cir. 1996) (superceded by statute on other grounds). The immunity applies no matter the nature or

22  extent of the judicial error and no matter the injury it imposes on the Plaintiff. <u>Id</u>. "Judges have absolute

23  immunity not because of their particular location within the Government but because of the special

24  nature of their responsibilities." <u>Butz v. Economou</u>, 438 U.S. 478, 511-512 (1978).

25        The rationale for the immunity is sound.  "[J]udges should be at liberty to exercise their functions

26  with independence and without fear of consequences." <u>Pierson v. Ray</u>, 386 U.S. 547, 554 (1967); see

27  also <u>Stump v. Sparkman</u>, 435 U.S. 349, 355 (1978) ("As early as 1872, the [Supreme] Court recognized

28  that it was a general principle of the highest importance to the proper administration of justice that a

1   judicial officer, in exercising the authority vested in him, should be free to act upon his own convictions,

2   without apprehension of personal consequences to himself." (citation, internal quotation marks, and

3   alterations omitted)). "Imposing . . . a burden [of exposure to liability] on judges would contribute not

4   to principled and fearless decision-making but to intimidation." Pierson, 386 U.S. at 554.  If judges could

5   be held personally liable for their decisions, they

6       may well be induced to act with an excess of caution or otherwise to skew their decisions
        in ways that result in less than full fidelity to the objective and independent criteria that
7       ought to guide their conduct. In this way, exposing [judges] to the same legal hazards
        faced by other citizens may detract from the rule of law instead of contributing to it.

8

9   Forrester v. White, 484 U.S. 219, 223 (1988).  Likewise, judicial immunity preserves proper appellate

10  procedures.[3]  "Judicial immunity apparently originated, in medieval times, as a device for discouraging

11  collateral attacks and thereby helping to establish appellate procedures as the standard system for

12  correcting judicial error." Forrester, at 225. "Most judicial mistakes or wrongs are open to correction

13  through ordinary mechanisms of review, which are largely free of the harmful side-effects inevitably

14  associated with exposing judges to personal liability." Id. at 227.

15      It is well established that officials acting in a judicial capacity are entitled to absolute immunity

16  against § 1983 actions. See, Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985); Stump v. Sparkman,

17  435 U.S. 349, 355-56, 55 L. Ed. 2d 331, 98 S. Ct. 1099 (1978). This immunity extends also to

18  administrative officials performing functions closely associated with the judicial process because the role

19  of the "hearing examiner or administrative law judge . . . is 'functionally comparable' to that of a judge."

20  Butz, at 513; see also Cleavinger, at 200.

21      The Ninth Circuit has held that the Governor of California is entitled to absolute quasi-judicial

22  immunity when making parole decisions.  In Miller v. Davis, 521 F.3d 1142, 1145 (9th Cir. Cal.

23  2008),the Court held,

24      We hold that the Governor's review of parole decisions regarding prisoners convicted
        of murder pursuant to Article V, § 8(b) of the California Constitution is "functionally
25      comparable" to a judge's role and is therefore entitled to absolute immunity from
        damages liability.  Admittedly, several of the Butz factors weigh against such a

26

27      [3]The Court notes that Plaintiff raised nearly identical claims as to his 2008 parole determination as he does here,
28  in a separate federal habeas corpus action. Rose v. Sisto, case no. 2:08-cv-03012 MCE DAD (Doc. 1).  In that case, the Court
    dismissed Plaintiff's due process challenge to his February 5, 2008 parole hearing determination as unexhausted and the Ninth
    Circuit denied Plaintiff's request for a certificate of appealability (Case No. 10-16302, dated December 20, 2011).

1   conclusion–the Governor's review is not adversarial in nature, there is no requirement
that the Governor consider precedent in making his determination, and the Governor is,
2   by definition as an elected official, not insulated from political influence, as Governor
Davis's almost uniform denials of parole amply demonstrate. Nevertheless, we believe
3   that the Governor's review of parole decisions "shares enough of the characteristics of
the judicial process," Butz, 438 U.S. at 513, to warrant absolute quasi-judicial immunity.
4

5   Here, given that Plaintiff refers to the individual defendants collectively as "Defendants," in essence,

6   Plaintiff alleges that former governor, Arnold Schwarzenegger, completed all of the same acts as the

7   other defendants.  (Doc. 56 at 7-17) Thus, Defendant Schwarzenegger is absolutely immune and may

8   not be held liable in this case.[4]

9       Likewise, numerous cases have held that parole board members perform a quasi judicial role

10   when determining whether to grant parole to a prisoner.  For example, in Swift v. California, 384 F.3d

11   1184, 1189 (9th Cir. 2004), the Court held,

12       parole board members are entitled to absolute immunity when they perform
"quasi-judicial" functions. Anderson, 714 F.2d at 909-10. Thus, parole board officials
13       of the BPT are entitled to absolute quasi-judicial immunity for decisions "to grant, deny,
or revoke parole" because these tasks are "functionally comparable" to tasks performed
14       by judges. Sellars, 641 F.2d at 1303; Bermudez v. Duenas, 936 F.2d 1064, 1066 (9th Cir.
1991) (holding Sellars immunity encompasses actions "taken when processing parole
15       applications"). Absolute immunity has also been extended to parole officials for the
"imposition of parole conditions" and the "execution of parole revocation procedures,"
16       tasks integrally related to an official's decision to grant or revoke parole. Anderson, 714
F.2d at 909.

17

18   Notably, in Sellars v. Procunier, 641 F.2d 1295 (9th Cir.), cert. denied, 454 U.S. 1102, 102 S. Ct. 678,

19   70 L. Ed. 2d 644 (1981), the Ninth Circuit considered the fact that "absolute immunity for parole board

20   officials does leave the genuinely wronged prisoner without civil redress against the official whose

21   malicious or dishonest actions deprive the prisoner of liberty." Id. at 1303.  Nevertheless, in determining

22   that parole board members would, indeed, receive the protection of the immunity, the Court placed

23   greater weight on the fact that "parole board officials perform functionally comparable tasks to judges

24   when they decide to grant, deny, or revoke parole." Id.

25

26   _____

[4]In addition, as to Plaintiff's claim against Defendant Schwarzenegger, Government officials may not be liable for
27   the actions of their subordinates under a theory of respondeat superior.  Iqbal, 129 S.Ct. at 1948.  Since a government official
cannot be held liable under a theory of vicarious liability in § 1983 actions, Plaintiff must plead sufficient facts showing the
28   official has violated the Constitution through his own individual actions.  Id. at 1948. Here Plaintiff also fails to state a
cognizable claim against Defendant Schwarzenegger, as he has not provided sufficient facts to allege the former governor
personally participated in the deprivation of his rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

8

Here, Plaintiff expressly seeks injunctive relief and expressly asserts that declaratory relief is available. (Doc. 56 at 5, 17-18) He does not assert that a declaratory decree was violated. Specifically, Plaintiff alleges,

> A present and actual controversy exist [sic] between Plaintiff Rose and Defendants concerning their rights and respective duties. Plaintiff Rose contends that Defendants have violated his rights under the Due Process Clause of the 14th amendment [sic] to the United States Constitution. Plaintiff is informed and believes, and thereon allege [sic] that Defendants deny these allegations. Declaratory relief is therefore necessary and appropriate.

Id. at 17. Likewise, Plaintiff alleges,

> No plain adequate or complete remedy at law is available to Plaintiff Rose to redress the wrongs alleged herein.
>
> [¶]
>
> If the court does not grant the injunctive relief sought herein, Plaintiff Rose will be irreparably harmed.

Id. at 17-18.

Therefore, according to the Federal Courts Improvement Act of 1996, § 309(c), Pub. L. No. 104-317, 110 Stat. 3847, 3853 (1996) (amending 42 U.S.C. § 1983), and the authorities set forth above, the Court finds that Defendants are entitled to absolute judicial immunity for the actions Plaintiff alleges were wrongful.

## IV.    NO LEAVE TO AMEND

The Court has carefully considered whether Plaintiff should be granted leave to file a fourth amended complaint. "Valid reasons for denying leave to amend include undue delay, bad faith, prejudice, and futility." California Architectural Bldg. Prod. v. Franciscan Ceramics, 818 F.2d 1466, 1472 (9th Cir. 1988); Klamath–Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau, 701 F.2d 1276, 1293 (9th Cir. 1983) (holding that, while leave to amend shall be freely given, the court need not allow futile amendments). Plaintiff has been given extensive guidance by the court in its previous dismissal orders regarding how to cure the deficiencies in his complaints. He has been unable to do so. Therefore, the Court concludes that granting Plaintiff leave to file a fourth amended complaint would be futile. Accordingly, the court will recommend that this action be dismissed without leave to amend for failure to state a cognizable claim.

9

V.    CONCLUSION

In accordance with the above, it is **HEREBY RECOMMENDED** that:

1.    This action be **DISMISSED** for failure to state a claim; and

2.    This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B).  Within twenty-one days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. If Plaintiff elects to file written objections, he should caption the document as "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **January 11, 2012**                              **/s/ Jennifer L. Thurston**
                                                                        UNITED STATES MAGISTRATE JUDGE

10